UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Crim. No. 20-613 (RMB) |
| Plaintiff : | |
| : | **OPINION** |
| v. : | |
| : | |
| AMITKUMAR KANUBHAI PATEL, : | |
| : | |
| Defendant : | |

_____

BUMB, United States District Judge

This matter comes before the Court upon Defendant's In Limine Motion for Admission of London Trial Court Opinion and Transcripts into Evidence Pursuant to Fed. R. Evid. 803(8)(A)(iii) ("Mot. in Limine") (Docket No. 73); the Government's brief in opposition to Plaintiff's motion ("Opp. Brief") (Docket No. 78); and Defendant's reply brief ("Reply Brief") (Docket No. 82.) The Court will determine these motions on the briefs pursuant to Federal Rule of Civil Procedure 78(b). For the reasons that follow, the Court will grant in part and deny in part Defendant's motion in limine.

I. BACKGROUND

On April 9, 2021, after an evidentiary hearing held before Deputy High Court Judge Clare Ambrose ("Judge Ambrose") on March 15-19 and 26, 2021, the High Court of Justice, Family Division in London, United Kingdom ("The London Court") dismissed Poonamben Patel's ("the mother") application for the summary

return of her child, AAP, to the United States pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction, also given effect under the Child Abduction and Custody Act 1985, and ordered the child to be returned to India.  ("London Court Judgment," ECF No. 21-5 at 3-9.) Defendant was subsequently extradited to the United States to face charges under 18 U.S.C. § 1204. According to the London Court, the following issues were before it:

> a.  Did the mother have rights of custody at the time of [] alleged wrongful removal or retention? Did the making of a US court order dated 2 May 2017 granting sole custody of [] to the father extinguish the mother's rights of custody?
>
> b.  What discussions took place leading to the mother entering into a custody agreement dated 8 March 2017 and a consent order dated 2 May 2019? In particular, did the parents agree that the father should be granted sole custody over [AAP] because i) the mother had refused to care for [AAP] any longer (the father's case)? or ii) the father wished to take [AAP] to India on holiday, required a visa for him, and had told the mother that he required a sole custody order to enable him to obtain that visa (the mother's case)?
>
> c.  Did the mother consent to [AAP's] permanent removal from, or retention away from the USA or did she only consent to a holiday?
>
> d.  Did the mother acquiesce in [AAP's] permanent removal from, or retention away from the USA in late July 2017?
>
> e.  Did [AAP] become settled in India?
>
> f.  If the mother had rights of custody at the relevant time, but the father has established one (or more) of the exceptions to return, how should the court exercise its discretion?

> g.      If the mother's 1980 Hague Convention application fails, should the court nonetheless order [AAP's] return to the USA in the exercise of its inherent jurisdiction? That would involve deciding if it was in [AAP's] best interests to be returned to the USA.

(London Court Judgment, ECF No. 21-5 at 10-11.)

## II.   THE PARTIES' ARGUMENTS

### A.   Defendant's Motion in Limine

Defendant contends that because the London Court's Judgment constitutes "factual findings from a legally authorized investigation" and because it is "offered against the government in a criminal case," the Judgment and the hearing transcripts constitute a "public record" that is entitled to "the presumption of reliability" and should be admitted into evidence at this trial pursuant to Federal Rule of Evidence 803(8)(A)(iii). (Def's Mem. of Law in Supp. of In Limine Mot. For Admission of London Trial Court Opinion and Transcripts into Evidence Pursuant to Fed. R. Evid. 802(8)(A)(iii) ("Def's Brief"), Docket No. 73-1 at 5.) Defendant submits that the transcript of proceedings before the London Court and the London Court's judgment constitute a "record or statement of a public office" that is duly authorized to conduct investigations and make factual findings based on such investigations, and falls within the public records exception to the inadmissibility of hearsay. (*Id.* at 5-6.) The London Court Judgment and transcripts are trustworthy, according to Defendant, because: (1) the hearings before the London Court were held six months after the mother filed her ICACU application alleging abduction; (2) Judge Ambrose

3

was a skilled and experienced family court judge, whose findings were upheld after a thorough review by the appellate court; (3) five days of hearings were held; and (4) the possibility of bias is non-existent because "the Judgment was a consequence of litigation, and consists of a litany of factual findings made upon consideration of witnesses' sworn testimony and documents, by a Judge entrusted to hear Hague Convention applications and other family court issues." (Def's Brief, Docket No. 73-1 at 9.) Defendant maintains that if the Government establishes that a particular sentence or paragraph in the Judgment is untrustworthy, it can be redacted and the Judgment and transcripts are otherwise admissible under Rule 803(8)(A)(iii).

B. **The Government's Opposition Brief**

In opposition to Defendant's motion in limine, the Government argues that court findings are hearsay and do not fall within the exception under Fed. Rule Evidence 803, and, therefore, may not be admitted as trial evidence. (Opposition Brief, Docket No. 78 at 6-7.) The Government relies in part of the Fourth Circuit case, *Nipper v. v. Snipes*, 7 F.3d 415 (4th Cir. 1993), which held that a federal district court's admission of a prior judicial finding by a state court judge was reversible error because the findings were hearsay. (*Id.* at 7.) The *Nipper* Court reasoned that judicial findings of fact are not "factual findings resulting from an investigation made pursuant to authority granted by law" under the statute because the advisory committee notes make plain that the statute was meant to apply "to findings of agencies and offices of the executive branch." (*Id.* at 7-8.) The Third Circuit has ruled similarly, that "a judicial opinion 'is an out of court statement offered for the

4

truth of the matter asserted' which 'constitutes hearsay,' that is inadmissible because it is not covered by 'an applicable exclusion or exception.'" (Opp. Brief, Docket No. 78 at 9, quoting *Int'l Land Acquisitions, Inc. v. Fausto*, 39 F. App'x 751, 756-57 (3d Cir. 2002). The Government cites to a slew of similar district court and circuit court decisions. (*Id.* at 9-12.) With respect to the transcripts of the London Court proceeding, the Government submits, among other things, that they are not admissible under Fed. R. Evid. 804(b)(1) because Defendant has not shown that the declarants are unavailable to testify at trial. (*Id.* at 13-15.) Further, Defendant cannot "present the jury with any of his prior statements to the UK Court because Rule 801(d)(2) does not allow a party to 'introduce his or her own statements through the testimony of other witnesses.'" (*Id.* at 17, quoting *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

  C. <u>Defendant's Reply Brief</u>

  Defendant, in his reply brief, distinguishes the cases cited by the Government, which held that judicial opinions are hearsay that do not fit within the Rule 803(8) exception because those cases, unlike here, did not involve judicial credibility findings offered against the government in a criminal case. (Reply Brief, Docket No. 82 at 1.) Defendant also notes the issue remains open in some Circuit Courts. (*Id.* at n. 1.)

  Defendant turns to Fed. R. of Evidence 608(b), and submits that the Third Circuit and other courts have found "judicial findings of credibility of witnesses to be admissible under Fed. R. Evid 608(b), where they are "probative of the

5

character for truthfulness or untruthfulness of...the witness." (Reply Brief, Docket No. 82 at 1.) Defendant maintains that the London Court's credibility findings on the issue of Poonamben Patel's credibility concerning whether Defendant wrongfully retained their child in India against her interests are highly relevant and probative of her character for truthfulness. (*Id.* at 2.) Defendant relies on cases which permitted the defense to cross-examine a government witness in a criminal trial on prior adverse credibility findings by another court. (*Id.* at 3-6, citing primarily *United States v. Jackson*, No. 19-CR-356 (ARR), 2020 WL 6738155 (E.D.N.Y. Nov. 16, 2020), *United States v. Cedeño*, 644 F.3d 79 (2d Cir. 2011), *United States v. White*, 692 F.3d 235 (2d Cir. 2012), and *United States v. Davis*, 183 F.3d 231 (3d Cir. 1999)). Thus, this Court will also address whether the London Court's credibility findings are admissible under Rule 608(b).

**III.   DISCUSSION**

    **A.   Fed. R. Evid. 803(8)(A)(iii)**

Federal Rule of Evidence 803(8)(A)(iii), (B) provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> (8) Public Records. A record or statement of a public office if:
>     (A) it sets out:
>
>         (i) the office's activities;
>
>         (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

This Court is persuaded the Fourth Circuit's holding in *Nipper*, where the court held that judicial findings of fact are not "public records" within meaning of the public record exception to the hearsay rule, based on the plain language of the rule, the advisory committee notes, the common law history, and the judicial policy that judicial findings of fact generally should be excluded under Fed. Rule Evid. 403 because the evidence is likely to be given undue weight by a jury. 7 F.3d at 416-418; a*ccord*, *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) ("We therefore agree with the Fourth, Tenth, and Eleventh Circuits that judicial findings of facts are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists. *Herrick v. Garvey*, 298 F.3d 1184, 1191–92 (10th Cir. 2002); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir.1994); *Nipper*, 7 F.3d at 417); *Int'l Land Acquisitions, Inc. v. Fausto*, 39 F. App'x 751, 756 (3d Cir. 2002) (quoting *Nipper*, 7 F.3d at 417 (4th Cir.1993) ("Rule 803(8)(C), on its face, does not apply to judicial findings of fact; it applies to 'factual findings resulting from an investigation made pursuant to authority granted by law.' Fed. R. Evid. 803(8)(C).") Therefore, this Court holds that the London Court's Judgment and transcript of proceedings are hearsay that are not admissible under Fed. R. Evid. 803(8).

Even if the London Court Judgment and transcript were not hearsay, admission of the entire judgment and underlying transcripts would greatly prejudice

the Government because a jury is likely to give undue weight to findings made by a judge, and thus, the evidence would be inadmissible under Federal Rule of Evidence 403(b). *Hairston v. Wash. Metro. Area Transit Auth.*, 1997 WL 411946 at * 2 (D.D.C. 1997) (finding that "judicial findings of fact are hearsay" and "must be excluded under Fed. R. Evid. 403, because its probative value is substantially outweighed by the danger of unfair prejudice").

B.    <u>Fed. R. Evid. 608(b)</u>

Defendant recognized that the Third Circuit, in I*nt'l Land Acquisitions, Inc. v. Fausto*, 39 F. App'x at 756 (3d Cir. 2002), held that a state court judge's decision was not a public record within Rule 803(8), and the moving party "must be able to point to an applicable [hearsay] exclusion or exception." Thus, Defendant relies on Federal Rule of Evidence 608(b) a witness's character for truthfulness or untruthfulness, which provides:

> (b) Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> > (1) the witness; or
> >
> > (2) another witness whose character the witness being cross-examined has testified about.
>
> By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

Extrinsic evidence is inadmissible under Fed. R. Evid. 608(b). *United States v. Davis*, 183 F.3d 231, 257 n. 12 (3d Cir.), *amended*, 197 F.3d 662 (3d Cir. 1999). "Federal Rule of Evidence 608(b) allows prior acts to "be inquired into on cross-examination, at the discretion of the court, if they are probative of a witness's truthfulness or untruthfulness." *United States v. Johnson*, No. 21-1322, 2022 WL 866284, at *2 (3d Cir. Mar. 23, 2022) citing *Davis*, 183 F.3d at 257. While the Third Circuit has not adopted the Second Circuit's factors applicable to a court's exercise of its discretion under Rule 608(b), these factors ("the *Cedeno* factors") are worthy of consideration when a court is called to

> determine[e] the probity and relevance of a prior incident in which a court has criticized a witness's testimony as unworthy of belief: (1) ""; (2) "whether the two sets of testimony involved similar subject matter"; (3) "whether the lie was under oath in a judicial proceeding or was made in a less formal context"; (4) "whether the lie was about a matter that was significant"; (5) "how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness"; (6) "the apparent motive for the lie and whether a similar motive existed in the current proceeding"; and (7) "whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible[….]"

*United States v. White*, 692 F.3d 235, 249 (2d Cir. 2012), as amended (Sept. 28, 2012) (quoting *United States v. Cedeno*, 644 F.3d 79, 82-83 (2d Cir. 2011)).

Under the first *Cedeno* factor, whether the prior judicial finding addressed the witness's veracity in that specific case or generally, Judge Clare Ambrose made the following credibility finding,

9

> For the reasons set out above I find that [Poonamben Patel] was deliberately lying in making her various allegations saying that [Defendant] told her over several months that the trip was only a holiday rather than a permanent move, and in alleging that he had misled her, in particular, into agreeing to AAP's departure, the custody agreement, and the custody order. These deliberate lies ran throughout the evidence and appeared to be a deliberate attempt to support a case on abduction, most probably with a view to improving her prospects of securing a green card and also enabling her to have AAP in the USA.
> …
> For the reasons set out above, I find that her account of the grandmother's attempt to choke and force pills down her (and abort AAP) was untrue.

(Docket No. 21-5 at 31-32.) Judge Ambrose's credibility findings refer to Poonamben Patel's veracity in the specific case before the London Court, an abduction case under the Hague Convention. However, this factor weighs in favor of admission under Rule 608(b) because the very same factual issues regarding Defendant's removal to, and retention of, AAP in India are at issue here, albeit under the International Parental Kidnapping Crime Act of 1993, 18 U.S.C. § 1204, rather than the Hague Convention. Thus, under the second *Cedeno* factor, the two sets of testimony, Poonamben Patel's testimony concerning the kidnapping of AAP, are likely to involve, not just similar, but the same subject matter. For the third *Cedeno* factor, the lies were under oath in the London judicial proceeding, and, under the fourth factor, the lies involved a very significant matter, an abduction charge and charges of physical abuse.

The fifth *Cedeno* factor is concerned with "how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness." The lies found by the London Court occurred between March 10, 2021 and March 26, 2021, and there are no known intervening credibility findings. Defendant was charged with kidnapping under 18 U.S.C. § 1204 on July 22, 2020 (Docket No. 5), and was in pretrial detention in this matter since his extradition shortly after the London Court proceedings for a period of time. There is no reason that the length of time since the lies were told in the London Court under the Hague Convention proceeding would caution against introducing the London Court's credibility findings here slightly more than one year later.

The sixth *Cedeno* factor is the motive for the lie in the earlier proceeding and whether there is a similar motive in the later proceeding. Judge Ambrose found that the motive in fabricating an abduction charge under the Hague Convention was to improve Poonamben Patel's chances of securing a green card in the United States and enabling her to have AAP in the United States. The same motive on part of Poonamben Patel is alleged by Defendant here. Finally, the seventh *Cedeno* factor is concerned with whether the witness offered a plausible explanation for the lie(s). Judge Ambrose found that she did not.

In *White*, the second circuit found that several factors weighed strongly in favor of admissibility, including: (1) the prior testimony was made under oath in a judicial proceeding; (2) the testimony involved an important matter; (3) the time between the lies and the trial was approximately nine months; (4) the motive for the

11

witnesses' discredited testimony was identical to the motive to lie at the defendant's trial; and (5) the witness offered no plausible explanation for inconsistencies in his previous testimony. 692 F.3d at 250.  Specifically, in *White*, the criminal charges in the two cases were the same, the prior judicial finding unequivocally discredited the Government witness's testimony; and the prior judicial credibility findings "could affect a jury's determination as to [the Government witness's] willingness to lie to secure a criminal conviction."  In *White*, the Fourth Circuit stated, "'a trial judge abuses his discretion in curtailing cross-examination of a government witness when the curtailment denies the jury sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government.'" *White*, 692 F.3d at 248 (quoting *United States v. Blanco*, 861 F.2d 773, 781 (2d Cir.1988) (internal quotation marks omitted in *White*).

      Each of the factors weighing in favor of admission of the credibility findings in *White* are present here.  Most importantly, the London Court found Poonamben Patel was motivated to lie about the abduction charges against Defendant under the Hague Convention for the purpose of improving her chances to secure a green card in the United States. Defendant here should have the opportunity to challenge the Government witnesses' willingness to lie about a kidnapping charge here for the same purpose. *See id.* at 251-52 ("[t]he excluded evidence spoke directly to a critical element of the Government's case and its exclusion prevented White from presenting a complete defense.) In short, this case presents an even stronger argument for

12

admission of a prior court's credibility findings concerning a Government witness than found by the Fourth Circuit in *White*.

This Court recognizes that it must impose reasonable limits on the use of this information by the defense after direct examination. *Id.* at 251 ("'The district court retained the authority to "impose 'reasonable limits' on cross-examination to protect against, e.g., harassment, prejudice, confusion, and waste.'" (quoting *Cedeño*, 644 F.3d at 82 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Thus, the Court will set forth the parameters of permissible cross-examination upon the conclusion of Poonamben Patel's direct examination. Obviously, if Poonamben Patel's testimony opens the door to broader impeachment of her credibility, this Court will fashion appropriate measures to the use of the adverse credibility findings by the London Court.

## IV. CONCLUSION

For the reasons, discussed above this Court will deny Defendant's motion in limine as to the London Court Judgment and transcripts under Federal Rule of Evidence 803(8)(A) and will grant in part the motion in limine as to Federal Rule of Evidence 608(b).

An appropriate Order follows.

<u>July 13, 2022</u>  
Date

    <u>s/Renée Marie Bumb</u>  
    **RENÉE MARIE BUMB**  
    **United States District Judge**

14